**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | | |
|---|---|---|
| TINA ALLEN | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| KILOLO KIJAKAZI, | * | No. 4:22-cv-00334-JJV |
| Acting Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

Tina Allen, Plaintiff, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits. The Administrative Law Judge (ALJ) concluded she had not been under a disability within the meaning of the Social Security Act, because she could perform jobs that exist in significant numbers in the national economy despite her impairments. (Tr. 17-29.)

This review function is extremely limited. A court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and to analyze whether Plaintiff was denied benefits due to legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, courts must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; a court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported

an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The history of the administrative proceedings and the statement of facts relevant to this decision are contained in the respective briefs and are not in serious dispute. Therefore, they will not be repeated in this opinion except as necessary. After careful review of the pleadings and evidence in this case, the Commissioner's decision is supported by substantial evidence and Plaintiff's Complaint is DISMISSED.

Plaintiff - who has a high school education - was fifty-four at the time of the administrative hearing. (Tr. 42.) She has past relevant work as a home health attendant, resident care aide, and janitor. (Tr. 27.)

The ALJ[1] found Ms. Allen had not engaged in substantial gainful activity since February 2, 2019 - the alleged onset date. (Tr. 20.) She has "severe" impairments in the form of "congestive heart failure and cardiomyopathy with dual chamber pacemaker placement in February 2019; obesity; and osteoarthritis." (*Id.*) The ALJ further found Ms. Allen did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 20-21.)

The ALJ next determined Ms. Allen had the residual functional capacity (RFC) to perform a reduced range of light work. (Tr. 22.) Based on this RFC assessment, the ALJ determined Plaintiff could no longer perform any of her past relevant work. (Tr. 27.) Accordingly, she

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

utilized the services of a vocational expert to determine what jobs, if any, Plaintiff could perform given her RFC. (Tr. 55-59.) Based in part on the testimony of the vocational expert, the ALJ determined Ms. Allen could perform the jobs of information clerk, storage facility rental clerk, and office helper. (Tr. 28.) Accordingly, the ALJ determined Plaintiff was not disabled. (*Id.*)

The Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, making her decision the final decision of the Commissioner. (Tr. 3-7.) Plaintiff filed the instant Complaint initiating this appeal. (Doc. No. 2.)

In support of her Complaint, Ms. Allen argues that the ALJ failed to evaluate the supportability of the opinions of her treating cardiologist. (Doc. No. 17 at 4-7.) Claims filed after March 27, 2017, like Ms. Allen's, are analyzed under 20 C.F.R. § 404.1520c. *Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020). Under the current regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from the claimant's treating physicians. 20 C.F.R. § 404.1520c(a). The regulation instructs the ALJ to determine the persuasiveness of each medical source or prior administrative medical findings based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any other factor that tends to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(a), (c). The ALJ is required to "explain" her decision as to the two most important factors—supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented" and the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with evidence from other medical and non-medical sources, the more persuasive the opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1)-(2).

Plaintiff's treating cardiologist, Scott Lensey, M.D, provided a Cardiac Assessment. (Tr. 233-235.) In this assessment, Dr. Lensey concludes that, *inter alia*, Ms. Allen is permanently disabled and cannot walk one hundred feet without stopping to rest. (Tr. 234.) In evaluating this Cardiac Assessment, the ALJ stated:

> The record also contains a statement from him dated October 28, 2019, where he indicated that she is permanently disabled. He said she is not able to walk 100 feet without stopping to rest, and that she has a cardiac condition that is Class III or IV in severity. (Exhibit 7E). This opinion does not match the claimant's testimony that Dr. Scott told her she could return to light work. Likewise, it does not match his statement on May 1, 2019 that she was able to return to work on June 3, 2019, or his statement on June 10, 2019 that she could return to work soon. (Exhibit 5F/194, and 197).
>
> In addition, it does not match the longitudinal medical evidence of record, including subsequent treatment notes from Dr. Scott, which show improved heart functioning. (Exhibit 19F). Since this opinion from Dr. Scott is not consistent with his own treatment notes, including other statements he made regarding the claimant's ability to work, treatment notes from other medical sources (e.g., Dr. Tolba, Dr. Idris), or the opinions of Dr. Thomas and Dr. Jarrard, it is not persuasive.

(Tr. 27.)

A close review of Dr. Lensey's Cardiac Assessment reveals that, in fact, it is inconsistent with his treatment notes and Plaintiff's own testimony. Dr. Lensey's June 10, 2019, treatment notes show Ms. Allen was "doing well" and she thought she may be able to return to work "within the next week." (Tr. 623.) Dr. Lensey had previously released her to return to work on June 3, 2019. (Tr. 628.) And as the ALJ correctly recites, the Cardiac Assessment is inconsistent with Plaintiff's own testimony. Ms. Allen testified:

> Q Did the doctor ever clear you to go back to work after you
>
> had your hospitalization?
>
> A No, ma'am. Not to that job.
>
> Q Did you ask the doctor?

4

> A He said I could probably do something light, but nothing,
> nothing like what I was doing.
>
> Q What -- he said light work. Did he define what that meant?
>
> A I guess, so I wouldn't have to be doing a lot of lifting, and stuff like that.
>
> Q Who was the doctor who said you could do light work?
>
> A Dr. Lensey Scott.
>
> Q is that the heart doctor?
>
> A Yes, ma'am.

(Tr. 50.)

Accordingly, I find the ALJ could rightly discount Dr. Lensey's Cardiac Assessment. Ms. Allen clearly experiences some level of limitation from the combination of her impairments. But given this limited review under the law and my careful assessment of the ALJ's opinion, her opinion is supported by substantial evidence.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). A "physical or mental impairment . . . results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff's treatment records fail to support an allegation of complete disability.

After a close review of the medical evidence, I find that ALJ properly evaluated the opinions of her treating cardiologist. The ALJ fairly addressed both supportability and consistency

factors. Further, the checkbox form consisted of unsupported statements rather than findings tied to clinical or diagnostic data, and were inconsistent with Dr. Lensey's own treatment notes and other medical evidence. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (describing opinions as "little evidentiary value" that consist of "nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses").

The ALJ also explained how these opinions were inconsistent with other medical evidence in the treatment record. Accordingly, the ALJ properly discounted this Assessment considering other competing evidence in the record.[3]

I have considered Plaintiff's other arguments – that the ALJ failed to adequately consider her cervical and lumbar degenerative disc disease and the Appeals Council failed to consider her new evidence – and find the Commissioner's arguments in response to be highly persuasive. (Doc. No. 22 at 9-15.) I do believe the newly submitted diagnostic testing is compelling. (Tr. 35-36.) Yet, without more, I agree with the Commissioner that the ALJ's RFC accounts for this impairment. (Plaintiff is limited to work with only "occasional postural activities (i.e., climb, balance, stoop, kneel, crouch, and crawl)." (Tr. 22.)

In summary, there is ample evidence to support the Commissioner's decision. I recognize

---

[3] 20 C.F.R. § 404.1527(c)(2), the regulation prior to the 2017 amendment, merited the treating physician controlling weight where it "is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record." 20 C.F.R. § 404.1527(c)(2); *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). Even so, under the former regulation, the United States Court of Appeals for the Eighth Circuit has reiterated:
> [The] ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). "Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

*Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).

there is also evidence to support Ms. Allen' claims.  Yet the overall evidence supports the ALJ's conclusion that she was capable of performing the light exertional jobs identified by the vocational expert.

Plaintiff had the burden of proving her disability.  *E.g., Sykes v. Bowen*, 854 F.2d 284, 285 (8th Cir. 1988).  Thus, she bore the responsibility of presenting the strongest case possible.  *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).  Plaintiff has simply not met that burden.  The record contains ample support as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991).

Counsel has zealously advocated for Ms. Allen here.  But it is not the task of a court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts her findings.  The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.  *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

I have reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).  The Commissioner's decision is not based on legal error.

IT IS, THEREFORE, ORDERED that the final decision of the Commissioner is affirmed, and Plaintiff's Complaint is dismissed with prejudice.

DATED this 21st day of February 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE